## JORALEMON v. POMEROY.

1. In an action for slander an innuendo cannot be used to enlarge or extend the meaning of the words spoken; it can only explain them, by connecting them with the inducement or *colloquium* previously averred.

2. The slander must appear substantially by the *colloquium* or inducement and the words alleged, and, unless it can be collected from them, it cannot be created by an allegation in the innuendo; it must appear by the natural meaning of the words in the conversation and circumstances in which their use is alleged.

Demurrer.   Argued before Justices NEVIUS, CARPENTER, and OGDEN.

This action was in case, for words, and in the first and second counts the words charged are, " You are a public whoremaster," and " you are a common whoremaster," to which counts the defendant pleaded the general issue.

3d count. " You " (meaning the plaintiff) " are a pretty man, riding the women along the street " (meaning and insinuating that the plaintiff was in the habit of having carnal copulation with divers loose, immodest, and lewd women). The fourth, fifth, and sixth counts are substantially the same, different innuendos being given in these several counts to meet the different construction that possibly might be given to the words charged.

7th count.  *Colloquium* of and concerning one Jane Wilson, wife of John Wilson.  " You " (meaning the plaintiff) " are in the habit of riding the women " (meaning and insinuating that the plaintiff was in the habit of having carnal copulation with the said Jane Wilson and some other woman).

The eighth, ninth, tenth, and eleventh counts, containing in substance the same charges, need not be recited.

12th count. Inducement, that the plaintiff was a country storekeeper, and used as such, divers weights and measures, and *colloquium* of and concerning a pair of gray horses and a pair of red nets, of which the plaintiff was the owner. " Short weights and measures paid for them," (meaning the said pair of gray horses and the said pair of red nets " by cheating the public " (meaning and insinuating that the plaintiff was a man of wicked and depraved mind, and had contrived and fraudulently intended to cheat and defraud divers persons, while he used, exercised, carried on, and followed the said trade and business, and for that purpose had knowingly, wilfully, and fraudulently kept and used, in the way of his said trade and business, certain false weights and measures for weighing and measuring goods, wares, and merchandise by him sold in the way of his said trade or business, so made and constructed as to cause the goods, wares, and merchandise weighed and measured therein and thereby, and sold thereby, to appear of greater weights and measures than the true and real weights and measures thereof, and did knowingly, wilfully, and fraudulently sell and utter to divers persons, in the way of his said trade and business, divers goods, wares, and merchandise, as and for the apparent weights and measures of the same, by such false weights and measures,

when in truth and in fact the weights and measures of such goods, wares, and merchandise, so sold and uttered, were short and deficient of such apparent weights and measures, and had thus defrauded and cheated a large number of persons and made large gains of money, sufficient to purchase the said pair of gray horses and the said pair of red nets, and had purchased the same with such gains).

The thirteenth count is the same as the twelfth, except that the words laid are "*false* weights and measures paid for them," by cheating the public," &c.

14th count. Same inducement and *colloquium* as in twelfth count: "Short weights and measures paid for them," (meaning the said pair of gray horses and the said pair of red nets) "by cheating the public," (meaning and insinuating that the plaintiff had knowingly, wilfully, fraudulently, and publicly kept and used, in the way of his said trade and business, false weights and measures, and knowingly, wilfully, and fraudulently did thereby and therein sell and utter to divers persons, in the way of the said trade and business, divers goods, wares, and merchandise, as and for their apparent weights and measures, by such false weights and measures, when in truth and in fact the weights and measures of such goods, wares, and merchandise so sold were short and deficient of such apparent weights and measures, and had thus defrauded and cheated a large number of persons, and thereby made large gains of money, sufficient to purchase the said pair of gray horses and the said pair of red nets, and had purchased the same with such gains).

The fifteenth count is the same as the fourteenth, except that the words are "*false* weights," &c.

To the last thirteen counts the defendant filed a general demurrer.

*A. C. M. Pennington,* for the plaintiff.

The counts, from the third to the eleventh, both inclusive, allege the use of words by the defendant, importing the charge of the commission by the plaintiff of the crime of *fornication,* and the counts from the twelfth to the fifteenth, both inclusive,

allege the use of words, by the defendant, importing the charge of the commission by the plaintiff of the crime of cheating at common law, and of fraud and deception in the practice of his trade or business.

The innuendo charges (and such is in part the use and purpose of the innuendo in pleading) the sense in which the plaintiff alleges and insists the words were used by the defendant. It is not contended that the innuendo can enlarge or change, in any way, the force of the words, but it is used properly to define the sense in which it is insisted the words were used. *Cooke on Defamation* 93, *et seq.*

It is not requisite, in order to sustain any of those counts, that the words used necessarily import a charge of crime, and can mean nothing else. It is sufficient that they may in some sense import such charge, and that it is alleged they were used slanderously, with intent to make such charge. *Starkie on Slander (ed.* 1832) 36, 50, 51, 58, 64.

It will be left to the plaintiff to satisfy the jury at the trial, under the instruction of the court, that the words were used in the sense complained of, and the sense in which they were used and the *quo animo* are to be gathered from the concomitant circumstances of the occasion on which they were used. 3 *Green* 248.

The old doctrine, that words are to be used *in mitiori sensu,* is exploded. *Stark.* 36.

Applying these principles, the words used may in some sense import the charges alleged.

The innuendoes sufficiently allege that the sense in which the words were used imported the charges against the plaintiff of the commission of the crimes of *fornication* and *cheating,* and of fraud and deception in his trade or business.

*B. Williamson,* contra.

CARPENTER, J., delivered the opinion of the court.

One set of counts in the plaintiff's declaration, from the third to the eleventh inclusive, relate to the same charge, which is laid in different ways to meet the possible contingencies of the case. They allege the use of words, which by the

Joralemon v. Pomeroy.

innuendoes in the several counts are so explained as to charge the plaintiff with the crime of fornication. Whatever may yet be the rule in England, undoubtedly it is actionable in this state to impute this offence, one involving moral turpitude, and which here has long since been made punishable by indictment. The question raised is not, whether it is actionable *per se*, without proof of special damage, to charge this offence upon another; but it is, whether the words do import the offence, and are properly explained by the innuendo, so that the special meaning, which it is alleged they were intended to convey, is evident without the aid of any previous *colloquium* or statement of extrinsic facts.

It is true that it is no longer the rule that the words alleged to be slanderous are to be construed *in mitiori sensu:* they are to be taken in their ordinary sense, as they would naturally be understood by the persons to whom they were addressed. But the meaning of the words is not to be ascertained by the innuendo. An innuendo cannot extend the sense of the words spoken beyond their natural meaning, unless something is put upon the record to which the words may be referred, and by which they may be explained. It connects the words spoken with something already on the record, and is only a link to attach together facts previously made known to the court. It may apply to whatever is already expressed, but cannot enlarge or change the sense of the previous words. *Rex* v. *Horne, Cowp.* 684; *Goldstein* v. *Foss,* 6 B. & C. 154; *Barlow* v. *Brands,* 3 *Green* 248; *Barham* v. *Nethersall, Yelv.* 22; 1 *Wm's. Saund.* 243, *note* 4. When words are susceptible of different meanings, of a harmless but also of an injurious meaning, the innuendo may then serve to define the sense in which the words were in fact used. In such case it will properly serve to point to the meaning which is injurious, and therefore actionable, and which, if found by the jury, will sustain the suit brought. *Griffith* v. *Lewis,* 8 Q. B. 841.

In this case the words are not susceptible of an injurious meaning, according to any legitimate interpretation. In themselves they are harmless, and they must have been used in some peculiar and cant way to convey the imputation charged

in the innuendo. Now if words have a mere local or cabalistical meaning, which is slanderous, or have been so used, being in their usual sense innocent, they must be made significant by a proper *colloquium* or inducement. There must be a previous averment of the sense in which they were used. Thus in *Angle* v. *Alexander*, 7 *Bing.* 119, it was decided as to the words " you are a prover under bankruptcies," meaning that the plaintiff was accustomed to prove fictitious debts under commissions, that a previous averment, that the defendant had been accustomed to employ the words in that sense, was requisite. So it has been said, that the words " black sheep " and " black legs " could not be explained by innuendo to mean persons of bad reputation, guilty of cheating or defrauding ; though, perhaps, the necessity of a prior averment of the sense in which these words were used may not be so clear as in the former instance. They are words which, perhaps, have acquired a fixed meaning, and when used in a certain connection, possibly the injurious meaning may be sufficiently obvious without the use of any prior explanatory averment. *McGregor* v. *Gregory*, 11 *M. & W.* 287. See *O'Brien* v. *Clement*, 16 *M. & W.* 159 (167) ; *Carter* v. *Andrews*, 16 *Pick.* 1 ; *Cooke on Defamation* 96, 100. Here the words do not, in their natural sense, impute any thing injurious, and upon this distinction, established by the well considered cases to which I have referred, they require the aid of an introductory statement of the peculiar sense in which it is asserted they were used to make them actionable. They require an inducement, and the innuendo will not suffice. The demurrer has been well taken to these counts.

The twelfth to the fifteenth counts, inclusive, relate to words spoken of the plaintiff, in his capacity of a country shopkeeper or retailer. The pleader in these, as in the preceding counts, seems to have mistaken the office of the innuendo. Averments of extrinsic and additional facts are made in this part of each of these counts, which would have found an appropriate position in the previous *colloquium*, and would have removed all ambiguity or doubt as to construction of the words. But these counts are not without an introductory statement, and setting

aside such averments as appear in the innuendo alone, we must look to the words charged, in connection with the prior averments, to ascertain if the action can be maintained. " If the words before the innuendo do not sound in slander, no words produced by the innuendo will make the action maintainable, for it is not in the nature of an innuendo to beget an action." *Barham* v. *Nethersall, supr.* Still if sufficient appears to support the action, an innuendo improperly enlarging the sense beyond the prior statement, or so much thereof as is faulty in that respect, may be rejected as surplusage. *Roberts* v. *Camden, 9 East* 93 ; *Harvey* v. *French,* 2 *Tyrwh.* 284, cit. 2 *Harr. Dig.* 2431.

But the words stated in these counts, which it appears were spoken of the plaintiff in respect of his trade and business, are in our judgment actionable. The declaration states that the plaintiff was a country storekeeper, and, as such, used divers weights and measures ; that he was the owner of a pair of gray horses and red nets, and that, in a conversation of and concerning the plaintiff and his said horses and nets, the defendant said : " Short (or " as in some counts " false) weights and measures paid for them," (meaning the said horses and nets) " by cheating the public." The innuendo, or so much as is necessary to refer to, in substance explains the charge to be, that the plaintiff paid for the said horses and nets by his gains, as such storekeeper, in the use of short or false weights and measures in the sale of his wares and merchandise. The explanation, to this extent, seems warranted by the words as spoken in connection with the business and occupation of the plaintiff. The words so used import a charge of fraud in his trade and business. Considered in their natural sense, as they must have been understood by the persons to whom they were addressed, they can mean nothing less, and are therefore plainly actionable. The demurrer to these counts must be overruled, and judgment for the plaintiff.